**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MONIQUE M.,
on behalf of M.N.I.S.,

              **Plaintiff,**

    v.                                  **Civil Action 2:25-cv-1172**
                                            **Magistrate Judge Kimberly A. Jolson**

COMMISIONER OF
SOCIAL SECURITY,

              **Defendant.**

## OPINION AND ORDER

Plaintiff Monique M., acting on behalf of M.N.I.S., a minor, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying M.N.I.S.'s application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff is M.N.I.S.'s mother and legal guardian. She protectively filed an application for SSI on M.N.I.S.'s behalf on May 12, 2022, alleging that he was disabled beginning May 12, 2022. (R. at 215–21). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on July 8, 2024. (R. at 40–59). On August 16, 2024, the ALJ issued a partially favorable decision, finding M.N.I.S. was disabled from May 12, 2022, through June 27, 2023, but as of June 28, 2023, medical improvement occurred and thus Plaintiff's disability ended. (R. at 14–39). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 9, 2025 (Doc. 1), and the Commissioner filed the administrative record on December 9, 2025. (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 9, 11).

### A.     The ALJ's Review and Decision

M.N.I.S. was born in 2015. Upon review of the record, the ALJ found that M.N.I.S. was a school age child on May 12, 2022, the date application was filed. (R. at 21, 215). Next, he found that M.N.I.S. had not engaged in substantial gainful activity since his application date. (R. at 21).

At the next step of the sequential evaluation process, the ALJ concluded that from May 12, 2022, through June 27, 2023, he had the following severe impairments: attention deficit hyperactivity disorder, combined type; disruptive behavior disorder; anxiety disorder; and sleep disorder. (*Id.*). He also found that from May 12, 2022, through June 27, 2023, M.N.I.S. did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). From May 12, 2022, through June 27, 2023, the severity of M.N.I.S.'s impairments functionally equaled the listings. (R. at 21–23). In considering the record, the ALJ determined that from May 12, 2022 through June 27, 2023, in the six domains of functioning that are pertinent to a child's benefits application, M.N.I.S. had less than a marked limitation in acquiring and using information; a marked limitation in attending and completing tasks; a marked limitation in interacting and relating to others; no limitation in moving about and manipulating objects; less than a marked limitation in caring for personal needs; and no limitation in health and physical well-being. (R. at 22). The ALJ found that M.N.I.S. was under a disability, as defined by the Social Security Act, from May 12, 2022, through June 27, 2023. (R. at 23).

Then, the ALJ found that M.N.I.S. had not developed any new impairment or impairments since June 28, 2023, the day his disability ended. (R. at 24). Additionally, M.N.I.S.'s current severe impairments were the same as those present from May 12, 2022, through June 27, 2023.

(*Id.*).  The ALJ next found that medical improvement occurred as of June 28, 2023.  (*Id.*).  Since June 28, 2023, M.N.I.S. had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*).

Since June 28, 2023, M.N.I.S. has not had an impairment or combination of impairments that functionally equals the severity of the listings.  (*Id.*).  In considering the record, the ALJ determined that since June 28, 2023, in the six domains of functioning that are pertinent to a child's benefits application, M.N.I.S. has less than a marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks; a less than marked limitation in interacting and relating to others; no limitation in moving about and manipulating objects; less than a marked limitation in caring for personal needs; and no limitation in health and physical well-being.  (R. at 24–32).  Because a finding of one "extreme" limitation or two "marked" limitations is needed to support an award of benefits, the ALJ found M.N.I.S.'s disability ended June 28, 2023, and M.N.I.S. has not become disabled again since that date.  (R. at 32–33).

## II.    STANDARD OF REVIEW

To qualify for SSI as a child under the age of 18, plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources.  *Id.*  An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

3

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)–(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":

(1) Acquiring and using information;
(2) Attending and completing tasks;
(3) Interacting and relating with others;
(4) Moving about and manipulating objects;
(5) Caring for yourself; and
(6) Health and physical well-being.

§ 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results:

"Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).

> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

In the context of that legal framework, this Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in concluding that M.N.I.S. experienced medical improvement as of June 28, 2023. (Doc. 9 at 6–11). The Commissioner counters that the record shows that substantial evidence supports the ALJ's determination and the ALJ provided sufficient explanation to support his finding. (Doc. 11 at 3–7). The Court agrees with the Commissioner that substantial evidence supports the ALJ's determination.

"The Social Security Act requires proof of continued disability for benefits" and provides that "benefits should terminate if an individual no longer meets the high standard of disability."

*Sierra F. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3941, 2025 WL 2780868, at \*2 (S.D. Ohio Sept. 30, 2025) (citing 42 U.S.C. § 423(f)).  Claimants are not entitled to a presumption of continuing disability.  *Cutlip*, 25 F.3d at 287.  To determine if a minor continues to be disabled, an ALJ follows a three-step process laid out in 20 C.F.R. § 416.994a.  The first step is consideration of whether there has been medical improvement in a claimant's condition.  20 C.F.R. § 416.994a(b)(1).  The regulations define "medical improvement" as "any decrease in the medical severity of [claimant's] impairment(s) which was present at the time of the most recent favorable decision that [claimant was] or continued to be disabled."  20 C.F.R. § 416.994a(c).  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs or laboratory findings associated with [a claimant's] impairment(s)[.]"  *Id.*  If an ALJ finds improvement, she then considers whether a claimant's "impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before."  20 C.F.R. § 416.994a(b)(2).  If not, the ALJ considers whether the claimant is currently disabled.  20 C.F.R. § 416.994a(b)(3).

Relevant here, there must be "substantial evidence" of "medical improvement" and proof that the claimant is no longer disabled to satisfy the medical improvement standard.  *Niemasz v. Barnhart*, 155 F. App'x 836, 840 (6th Cir. 2005) (citing 42 U.S.C. § 423(f)(1)).  If the Commissioner's findings on the issue of medical improvement are supported by substantial evidence, the Commissioner's decision must be affirmed.  *Id.*

Here, the ALJ found that M.N.I.S. was under a disability from May 12, 2022, through June 27, 2023.  (R. at 23).  Underpinning this finding was the ALJ's conclusion that M.N.I.S. had a marked limitation in attending and completing tasks and a marked limitation in interacting and relating to others.  (R. at 22).  But then, the ALJ found that M.N.I.S. medically improved as of June 28, 2023, which resulted in less than marked limitations in both areas.  (R. at 24–26).

6

In making this determination, the ALJ considered M.N.I.S.'s mother's testimony that his "attention deficit hyperactivity disorder medications have made a big difference" because he is more focused and able to comprehend.  (R. at 24; *see* R. at 50–51).  The ALJ found this testimony consistent with treatment records documenting M.N.I.S.'s improvement with medication beginning in early 2023.  (R. at 24).  In particular, M.N.I.S.'s mother reported in February 2023 that the medication worked well, and M.N.I.S. was doing well in school.  (R. at 24–25 (citing R. at 547, 566)).  The ALJ noted M.N.I.S.'s mother's reports that he had some hyperactivity when he got home from school, but M.N.I.S. also improved in listening and behavior and had no reports of issues at school.  (R. at 25 (citing R. at 566)).  In fact, he was noted to be calm and cooperative. (*Id.* (citing R. at 569)).  In April 2023, M.N.I.S.'s school endorsed improved mood and behavior, although he still had "off" days.  (*Id.* (citing R. at 625)).

The ALJ then considered that on June 28, 2023, at a psychology follow-up, the doctor noted M.N.I.S.'s attention deficit hyperactivity disorder to be improving.  (*Id.* (citing R. at 690)). The ALJ found that on "examination he was cooperative with normal behavior, normal eye contact, normal social reciprocity, normal speech, euthymic and cheerful mood, linear and distractible thought process, normal thought content, normal alertness, good insight, good judgment and good impulse control."  (*Id.* (citing R. at 691)).  Then in July 2023, M.N.I.S. was negative for psychiatric or behavior concerns at a physical.  (*Id.* (citing R. at 700)).  The ALJ also highlighted that his mental status examination later that month noted unchanged findings, a calm and cooperative attitude, normal behavior, and good impulse control.  (*Id.* (citing R. at 717, 729); *see also id.* (citing R. at 728 (also finding a reduced parent TSS on the Vanderbilt questionnaire was noted)).  Then, the ALJ stated that in 2023, M.N.I.S.'s provider noted that his increased medication dosage was working well, and a follow-up stated he had no behavior problems.  (*Id.*

(citing R. at 755, 799)).  At that time, he was getting along well with his parents, siblings, and classmates, and there were no school concerns reported by his teacher.  (*Id.* (citing R. at 799)).

The ALJ went on to consider that in 2024, there were similar notes of symptom control with medication, though his behavior worsened when he was out of his medication.  (*Id.* (citing R. at 946)).  M.N.I.S.'s mother reported that the medication was working well for school days, but there was some hyperactivity later in the day "as she was unable to deliver his medication at noon." (*Id.* (citing R. at 950) (cleaned up)).  The ALJ considered that overall behavior during this time was average without mood concerns, and his symptoms were well-controlled during the daytime on medication.  (*Id.* (citing R. at 950, 953)).  Still, the ALJ acknowledged that there were some ongoing concerns late in the afternoon or on the bus ride home, with one incident of M.N.I.S. grabbing another student.  (*Id.* (citing R. at 950, 953); *see also id.* (citing R. at 311 (school report documenting that in November 2023, M.N.I.S. received a two-day in-school suspension after he twisted the arm of another student and told her he was going to kill her someday)).

The ALJ considered that aside from the incident with the other student in November 2023, there was no evidence of "recent" behavioral issues at school in the record.  (*Id.* (citing R. at 309–29)).  He was engaged and raised his hand.  (*Id.* (citing R. at 327–28)).  He did not need intervention services and was "on the high end of the class."  (*Id.* (citing R. at 327–28)).  The ALJ noted that his 2023–2024 school report stated he was "usually focused or consistently focused in all areas of study" during the fourth quarter.  (*Id.* (citing R. at 340)).  "He scored 'excellent' in academic and social behavior, including working well with others, working well independently, completing classwork and homework, classroom participation, listening and following directions and respecting others."  (R. at 25–26 (citing R at 341) (citation modified)).  The ALJ considered that in late 2023, it was determined M.N.I.S. was not suspected of having a disability and required no

further accommodations.  (R. at 26 (citing R. at 357)).  M.N.I.S.'s teacher reported he was performing at the top of his class, was focused on work, helped his peers, volunteered answerers, read aloud, and was a great friend.  (*Id.* (citing R. at 358 (noting Plaintiff was at the top of his class in math and had the second highest score in reading))).  Finally, the ALJ considered that subsequent educational records documented no behavioral or educational concerns, showed M.N.I.S. performed at or above grade expectations, stated he did not require special education services, and indicated his teacher noted him to be usually focused on the subject matter.  (*Id.* (citing R. at 358)).

Based on this evidence, the ALJ found that M.N.I.S. experienced significant improvement on attention deficit hyperactivity disorder medication as of June 2023.  (*Id.*).  He then found that M.N.I.S. had less than marked limitations in attending and completing tasks and interacting and relating with others.  (R. at 26–29).  In doing so, he relied upon the evidence he just explained including the records related to M.N.I.S's general improvement on medication, the records related to his academic and social improvement at school, the positive notes from teachers, and the generally normal mental status examinations.  (R. at 28–29).

Plaintiff contends that the ALJ's discussion is a "selective reading of the record that emphasizes isolated reports of improvement while minimizing or ignoring persistent functional limitations, context-dependent symptom control, and contrary evidence."  (Doc. 9 at 7).  She points to records that document M.N.I.S's symptoms becoming worse after school, M.N.I.S having behavior and social difficulties, and M.N.I.S experiencing anxiety and sleep disturbances.  (*Id.* at 7–9 (citing R. at 566 (February 2023 record noting medication wearing off), 583–84 (March 2023 record documenting "worsening" behaviors at home and "mood issues"), 666 (June 2023 record noting hyperactivity and academic struggles), 726 (July 2023 record discussing conflicts at home), 755 (August 2023 record documenting concerns M.N.I.S.'s mother's concerns for him to be by

himself), 801 (October 2023 record recording M.N.I.S.'s mother's concerns with his reading and math), 930 (August 2023 record noting recent separation anxiety), 950 (March 2024 record documenting behavior concerns after medication wears off), 953 (same)). Plaintiff asserts the ALJ's failure to reconcile these portions of the record, and his heavy reliance on academic records that post-dated the alleged improvement by several months, results in a finding of medical improvement as of June 28, 2023, that is not supported by substantial evidence. (*Id.* at 9).

In essence, Plaintiff argues that the ALJ chose to highlight parts of record to support his conclusion while ignoring contrary evidence. As this Court has noted, "arguments that the ALJ mischaracterized or cherry-picked the record are seldom successful, because the same process can be described more neutrally as weighing the evidence and because crediting such arguments would require the Courts to reweigh the evidence." *Sierra F. v. Comm'r of Soc. Sec.*, No. 2:24-CV-3941, 2025 WL 2780868, at *4 (S.D. Ohio Sept. 30, 2025) (collecting cases). Here, the ALJ acknowledged reports that M.N.I.S.'s symptoms became worse after his medication wore off in the afternoon. The ALJ still found, upon consideration of the record as a whole, improvement of M.N.I.S.'s symptoms generally documented in his medical record, in his school reports, and in testimony about his daily activities. *See* 20 C.F.R. § 416.994a(c). Based on that same evidence, the ALJ concluded that M.N.I.S. has a less than marked limitation in attending and completing tasks and in interacting and relating to others. As outlined above, substantial evidence supports these findings. Plaintiff's citation to evidence in the record that allegedly supports her position of M.N.I.S.'s continued marked limitations in attending and completing tasks and in interacting with others does not bring the ALJ's decision outside of his zone of choices. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018) ("[I]t is not for us to decide if there was evidence in favor of [the plaintiff's] position. 'The substantial-evidence standard . . .

10

presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" (citation omitted)); *cf. Underwood ex rel. CPP v. Astrue*, No. 1:11-CV-315, 2012 WL 3023252, at *4–5 (S.D. Ohio July 24, 2012) (concluding an ALJ's finding of medical improvement was supported by substantial evidence even when the record contained some reports of worsening in the child's condition), *report and recommendation adopted*, No. 1:11-CV-00315, 2012 WL 4815520 (S.D. Ohio Oct. 10, 2012).

Plaintiff's argument that the ALJ impermissibly equated medication dependent functioning with medical improvement does not change the outcome.  (Doc. 9 at 9–10).  Plaintiff presents no law to support that this is an error by itself.  She merely cites a Social Security regulation which provides that generally if a child needs medication to make functioning possible or improve functioning, the child will have a limitation even if he is functioning well with the help or support. (Doc. 9 at 10 (citing SSR 09-1P, 2009 WL 396031, at *6 (S.S.A. Feb 17, 2009)).  Importantly, though, the ALJ did not find that M.N.I.S. had no limitation in either attending and completing tasks or interacting and relating to peers.  Rather, he found a "less than marked" limitation in each. (R. at 27–29).  Simply put, neither the evidence Plaintiff cites nor SSR 09-1P required the ALJ to find a marked limitation.  *See Darks v. Comm'r of Soc. Sec.*, No. 1:14-CV-921, 2016 WL 703581, at *5 (S.D. Ohio Jan. 25, 2016) ("[M]any children with 'less than marked' limitations may perform poorly in school and/or require significant additional resources for a variety of reasons that do not equate to a 'disability.'"), *report and recommendation adopted*, No. 1:14CV921, 2016 WL 695992 (S.D. Ohio Feb. 22, 2016).  Additionally, the ALJ relied on more than M.N.I.S.'s improvement with medication alone.  As discussed above, the ALJ considered Plaintiff's normal medical exam results, record of only one behavioral issue at school, reports of Plaintiff's academic and social success at school, and an evaluation finding that Plaintiff was not suspected of having a disability

11

and required no further accommodations. (R. at 27–29). Substantial evidence supports the ALJ's findings.

Ultimately, the fact that there may be evidence in the record that supports a different result does not mean that the ALJ's findings are not supported by substantial evidence. *See, e.g.*, *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *see also Smith v. Comm'r of Soc. Sec.*, No. 1:14-CV-746, 2015 WL 9467684, at *7 (S.D. Ohio Dec. 2, 2015) ("[T]he evaluation of whether substantial evidence exists does not involve deciding whether this Court would have reached a different decision based upon any singular piece of evidence."), *report and recommendation adopted*, No. 1:14CV746, 2015 WL 9460280 (S.D. Ohio Dec. 28, 2015). Remand is not required where, as here, the ALJ explained his decision and substantial evidence supports that decision.

## V. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date: March 31, 2026                    *s/ Kimberly A. Jolson*
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE